24-25-63 Disability Rights New York v. New York D.L.A. Let it settle a little bit more here. All right. Attorney Asbee. Good morning, Your Honors. May it please the Court, my name is Christina Asbee and I represent Disability Rights New York, the appellant. Before this Court are two appeals filed by DRNY against New York State Department of Corrections and Community Supervision, which I will refer to as DOCS. The issue in this first appeal, DRNY 1, is whether or not the District Court committed reversible error when they denied prevailing party fee status to DRNY and also when they made a conclusion that our fees and hourly rates were excessive. I will discuss three points today. First, that DRNY is the prevailing party under the Lackey v. Stinney Brightline rule. Second, that the Court should reject DOCS's overly broad interpretation of the Lackey decision. And third, the District Court needs guidance on the correct legal standard to apply when calculating prevailing party fees. In this case, DOCS withheld, the underlying case, DOCS withheld records that DRNY requested pursuant to its federal authority as the Protection Advocacy Agency for New York State. Access to records is an essential part of the work that DRNY does because what we do is protect people with disabilities that are housed in DOCS facilities to ensure that they're not suffering from abuse and neglect. So much of the work that we do requires access to records and careful review of those records. We were forced into court for this case in 2018, and we litigated it until the bitter end. This, the, in this case, DRNY received... But what you received was not a judgment in your favor. You received a dismissal as moot. And they, your adversary argues that that's because after enactment of the New York law, they turned over all the records as required by that law, that that's what secured any access that you got, not the lawsuit. You know, you do face some of what the Supreme Court said last term in Lackey v. Stinney about what it takes to be viewed as a prevailing party. So why don't you focus on why you think you satisfied the requirements stated by the Supreme Court? Yes. This, we are the prevailing party at the motion for reconsidering, the motion for reconsideration. Under Lackey, it, under Lackey it is because it was a final order. It was a summary, it was a second summary judgment where the court included its decision on their motion for reconsideration. And it, then what the court did was it went from the first, its first conclusion of law in the first summary judgment filed by DOCS that said that DRNY is, that the federal protection and advocacy laws require that DRNY as a P&A for New York State must physically go to each of the DOCS facilities where DOCS houses the records for the individuals that we need access to their records. We must physically go, tab each page we want copied. We won't, we were not allowed to copy records at the facility when we were there. And then we have to go back to our office and we have to pay for the records and then DOCS will send us the records. Okay, so that was what the first determination of law the court made in the first summary judgment decision. In the second summary judgment decision, the court reversed its position on that. It said, actually, the protection, I changed my mind. The protection in advocacy acts do not require the physical inspection as a prerequisite to getting copies of records. What is required is a sufficiently identifiable request. And that, and we, in the facts of this case, we met that burden because our records requests were, the records that we requested were produced. But the court determined you didn't meet that burden. It's just, it didn't change its denial of your summary judgment or your preliminary injunction. Am I misunderstanding? We didn't have a preliminary injunction in the first case. So that's a fundamental distinction between LACI. So LACI's Brightline Rural Test, while it does apply in this case, not in the same context as it did in the actual LACI decision. So in this case. LACI holds that getting, succeeding on a preliminary injunction is not enough to be viewed as a prevailing party. You failed on your. We didn't have a preliminary injunction in this case. That's in the second case, D-R-N-Y-2. And this is, this is the first case where we're right out of the. So what is it that you think you prevailed on that satisfies LACI? Well, okay. The LACI test requires that you have enduring relief that changes the legal relationship between the parties.  And that it is judicially sanctioned. And that just means a court order. In some ways, it can be interim court order. It just has to be final on merits. And so in this case, right out of the gate, docs filed its first summary judgment. They didn't file an answer. They just filed a summary judgment after we filed our complaint. We did not file a preliminary injunction in this case. And so out of the gate, they filed a first summary judgment. And so, again, I already explained that. Like, the court said the physical prerequisite, and then only in the second summary judgment order did they rule on the law that the PNA does not require the physical inspection. Importantly, docs imposed that physical inspection requirement while they were briefing the first summary judgment. Are you saying that docs changed its record policy in response to the reconsideration motion? No, before the reconsideration. It changed its policy at the time that they filed their first summary judgment. What was the judicial order that gave you the relief you were seeking? The second summary judgment that included the motion for reconsideration. And when the court granted that, it explicitly said that its ruling did not affect the ultimate disposition of the motion for summary judgment. So it didn't give you summary judgment. What did it give you? Well, it gave us a legal conclusion on the law that led docs to produce the records before the state law even was contemplated by the legislature, for one. It wasn't even a bill. It gave you more ruling on the merits. No, it gave us a ruling on the law. So the law at issue, it had changed its position. And even though the district court provides some mental gymnastics that somehow gets to a conclusion that's in docs' favor, its conclusion on the law is very clear. And it was clear to docs because docs did not appeal that interim. So the argument I take it is, even though it continued to rule against you in the summary judgment and say that in your case you do have to physically come look at the records because we don't, I, the court, don't think your requests are sufficiently clear, because the court said, but I didn't mean to say that it's always the case that even with a clear request you have to come look at it. And you view that as a, not just a moral victory or a helpful principle of law, but as a legal. It's a practical. It's a legal victory and a practical victory. Because what it meant was that docs had instituted this physical inspection requirement prior to the first summary judgment order. After you filed, I mean, that's part of what's confusing me. When you filed suit, that physical inspection requirement didn't exist. Well, yeah, that's the, and that's a, your confusion is right on point. Because. Well, but I'm a little, I'm actually directing it at your argument. So don't endorse it too much until I finish. The thing that you were challenging was they're not giving us these particular records. As the case is going along, docs adopts a new principle that says you have to come in and physically look at them and mark them first. The court seems to arguably endorse that position in its first summary judgment. It comes back in the second summary judgment and said, no, I think you've misunderstood. I don't mean to say that's always the case. But it's still the case for you. So the relief that you sought, because we don't think your requests are sufficiently clear, the court said that. Now, maybe they turned around and just gave some records. But the court didn't change its ruling as to your entitlement to the relief you were seeking in the case in the second summary judgment. But your point is the court made a legal determination that was beneficial and became one of the goals that you were pursuing in the course of the litigation. Is that a fair? Or where, what is the point of that? At the time of the motion for reconsideration, because it was in a nonvoluntary way. Because they understood the records that we were requesting, and then they provided DRNY with the records at issue in that. Were they under a court order to produce the records at that time? Were they under a court order? No, they were not. Because that was still being contemplated. That was, in fact, they weren't under a court order because those were the issues, the issues that were going to be decided in the trial. Well, that's having a problem understanding how you got judicially sanctioned, you got that relief in a judicially sanctioned way. I mean, I'm looking now, it said especially that it was denying, it was clarifying the first summary judgment order's rationale. But it was otherwise denying the motion as both untimely and unsupported by a showing of cause for the reasons stated by docs in its opposition memorandum. That hardly sounds like you're a prevailing party. I mean, what am I missing? Well, the fact that the P&A records access provisions give us records. We get to inspect and copy records that we request, pursuant to our federal mandates to make sure that people aren't abused and neglected. So in doing that, imposing a physical prerequisite, as they did in the first summary judgment, that changed our legal position. It changed the legal relationship between Deere and White and docs. And in the motion for reconsideration, they flipped the judge, the judge's order that says, okay, you don't actually have that physical prerequisite because I'm changing my position on my interpretation of the law. At that point in time, docs in an involuntary way had to produce the records because we requested the records and we didn't have a ---- Involuntary, meaning in order to comply with the law as the court described it, they had to produce them, not the court ordered them to produce them. Exactly. It was involuntary in the sense that, yes, it was not an explicit court order because the issue was a ---- that was a material issue in genuine ---- a genuine issue in dispute that was to be saved for trial. You think the court of litigation and disputing a principle of New York law and the New York Court of Appeals in another case entirely interpreted the law in a way favorable to you, that you're now a prevailing party under the standards that the Supreme Court just articulated in Lackey? I'm not quite sure I understand the question. Okay, in any event, thank you. Yes, Your Honor. All right, we'll get to hear from you again. Thank you. Thank you. Attorney Brody. May it please the Court, Frederick Brody for Dox. The district court court order denying attorney's fees should be affirmed because plaintiff lost this case. Dox made three motions for summary judgment. The first two were granted in part and the third was granted in full. Plaintiff moved for summary judgment twice. The district court denied both motions. At the end of the case, the district court entered judgment dismissing the complaint. Plaintiff was awarded none of the relief requested in the complaint. You can look in the appendix at page 41 at their request for relief. There was no declaratory judgment, no injunction. And no other relief. The district court said, though, in its decision on the third summary judgment motion that, quote, based on the court's findings in the first and second summary judgment orders as well as documents produced to DRNY subsequent to those orders, Dox now has produced all of the documents requested by DRNY and its demands. Doesn't that imply that the court understood that you were, that Dox was producing these documents in response to its, the findings and actions that it had taken? It does not. And that points to a misapprehension of the record in counsel's argument. Most of these records were produced in the ordinary course of business by Dox. Ms. Sheehan's declaration, which is in the record and particularly at pages 84 to 114, details the day-to-day back-and-forth between Dox and DRNY over records production, over what records plaintiff was requesting, what records they received, and the logistics of plaintiff's payments. So Dox moved that first motion for summary judgment. The theory of the motion was, this case is wrong because we produced these records. And Dox ultimately showed that plaintiff received all the records it paid for. Sometimes plaintiff's payment came after the lawsuit had been brought, and then, of course, the records were produced after the lawsuit had been brought. But Dox did adopt this policy for a while. As the litigation was underway, they said, we don't have any obligation to do your copying and mailing for you. If you want to come get them, come get them. And the Court, even though it didn't give the sort of narrow relief or the specific relief, said, no, that's not how the Federal statute works. Maybe if the requests aren't sufficiently clear, you can require that they come or clarify their requests. But it did essentially reject Dox's policy. And I'm assuming that following that order, Dox changed its policy. Or am I wrong about that?  Dox changed its policy in response to the State P&A Records Act, the New York Act. So even after the Court, even after the district court said the policy that requires people to come in in person is not, I'm not saying that's lawful, that's not lawful, it's only in the context of inadequate requests, Dox continued to do the thing that the Court had just said it couldn't do? Well, no. Well, first of all, Dox didn't, the Court didn't say Dox's policy was unlawful. The P&A Acts require that Dox give access to records. So Dox said, okay, we're giving on-site physical access. You can come in any time, look at the records. It's immediate. And that was one of Dox's arguments on the law in DRNY-2, that on-site physical access means access. DRNY-1 was filed in 2018. All of these 34 individuals, all of these records requests were under the prior system. Dox did not adopt the physical access policy until 2019. So everything about the physical access policy in this case is dicta. Now, as far as 2019 goes, the district court did not say Dox's physical access policy was illegal. Throughout the case, multiple times, the Court held that physical access is access under the P&A Acts. The Court in the second, in the reconsideration opinion, gave a more nuanced description of the law where they said, okay, physical access is access, but DRNY, you can also get records through a written request if you make the written request sufficiently specific. Now, again, that didn't bear upon the requests here because the district court also said that the requests here, all 34 of them, were not sufficiently specific. So really what happened in the reconsideration motion was the Court initially, first summary judgment motion, gave a broad holding, DRNY, this is why you lose. In the reconsideration opinion, the district court gave a somewhat narrower holding or, I would say, a more nuanced holding saying, DRNY, this is why you lose. You might, and I believe the Court used the word might, be able to get records in the future through a written request if you meet these criteria of specificity. But that didn't bear upon the 34 individual records requests that were at issue here. Those records requests, and this is a — this goes back to my earlier statement. Those records requests were all granted in the ordinary course of business, and that was Dock's defense. Under Lackey v. Stinney, you determine who prevailed at the end of the suit, that is, when the matter is finally set at rest. That's 604 U.S. at 200. Here, the judgment conclusively resolved all of plaintiff's claims in Dock's favor. And the district court recognized this. The district court said plaintiff had not secured, quote, any form of relief on the merits, closed quote, that materially altered the party's relationship. That's on page 6 of the Special Appendix. Now, if DRNY had actually won the case, the district court would have realized that. One moment, Your Honor. There were two cases where there was production following the reconsideration of it, and that was individuals Y and B.B. And in those cases, Dock's had moved for summary judgment. Dock's file showed that the records were sent. And DRNY responded, we never received the records. So obviously, issue of fact that precludes summary judgment as to Y and B.B. So Dock's went and produced the records, and then we got summary judgment on the whole case. The district court did not order Dock's to send those records, either in the reconsideration ruling or anywhere else. To the contrary, the district court agreed with Dock's. As I said, the physical on-site access is access to records under the P&A Acts. And if you want confirmation that that was the actual ruling of the district court, they didn't say Dock's was being illegal, you can look at pages 6 to 7 of the Special Appendix, pages 168, 223, 494 to 495, 510, and 514 of the Appendix. And even if this lawsuit had spurred Dock's to produce records, let's say plaintiff brought the suit in 2018, and Dock's said, oh, my gosh, we've been sued. We've got to produce all these records, and they produced them. Let's say there was that cause and effect pattern. That would be a catalyst theory argument, which the Supreme Court has barred under Buchanan. And with respect to the New York P&A Records Act, I know that the plaintiff argues that Dock's changed its practice in response to the lawsuit after the P&A Records Act was passed. Dock's complied with the P&A Records Act, the New York Act, because it's the law of the State of New York. It didn't have anything to do with this lawsuit. In fact, the record at page 381 shows that Dock's began complying on the Act's effective date. That date didn't have anything to do with the lawsuit. It had to do with the passage of the Act. Unless the Court has further questions, I'll rest on the briefs at this point. Thank you. Attorney Angelou. Your Honor. Your Honor, in this case, in applying the bright-line rule that Lackey v. Stinney created, the rule did not change in any way from when we filed the petition for today. The rule stayed the same in this particular case, because what we are arguing Lackey v. Stinney rule. Yeah, the bright-line rule that requires enduring relief, judicially sanctioned that materially alters the legal relationship between the parties. which is the District Court's conclusion of the, let me get the date to be sure we're talking about the same document, the November 4th, 2020 ruling. Right. And that's the one where after clarifying the law in three respects, the Court says that the ruling might have been different had the plaintiff done certain things, specifically identified in writing which records it definitely wanted copied, provided the necessary payment, and waited the necessary amount of time for docs to retreat. And therefore, you lost. You lost at that point, because you had not done things that complied with the amended or revised construction of the law. So again, I'm having difficulty understanding how you're a prevailing party if your argument, as I understand it, is thereafter you made requests that satisfied the requirements the District Court said were implicit in the law, and docs gave you the documents. But your lawsuit did not satisfy the construction of the law that the District Court ultimately came to. I'm sorry. I'm trying to follow. Do you agree you lost your motion at that stage because the District Court found you'd failed in the three respects I just identified? No, I respectfully disagree. Why not? Well, the requests at issue in this lawsuit, so from A to HH, I think, and then the RFT documents that we requested, or RTF documents that we requested, those requests never changed. We never resubmitted any requests during the pendency of this lawsuit. The requests themselves were at issue. So at the time of the motion for reconsideration, we didn't draft other requests that ---- I understand that. And the District Court explained that it wasn't giving you relief because your requests did not satisfy the three conditions that it identified in its opinion. In the second motion ---- I'm sorry. In the second summary judgment decision, the court ---- that was a question of fact that the court was reserving until the final disposition of the case. But in some of the requested issue, they made a final determination in the second summary judgment as well as in the first summary judgment. But our claims survived. And especially related to ---- I understand your claims survived. That's not a favorable decision on the merit, on the ---- if that's not a matter of giving you enduring relief, it just lets your claims survive. Well, it did. That second ---- it's our position that that second summary judgment decision, it did provide us enduring relief because we ---- because at that point in time, the docs was ---- the court told docs you can't institute that physical inspection requirement. And that is the enduring judicial relief. And then our ---- and it's our position that docs involuntarily produced the records because they wanted to comply with the Federal law. Importantly, the State law was not at issue at this time. Thank you. Appreciate your arguments. Thank you. And I have a feeling we'll be seeing you in about two seconds because the next case you are writing is 2425-65, also Disability Rights New York v. New York Department of Corrections. Thank you. Whatever you're ready. Good morning, Your Honors. May it please the Court, we are still in the morning, so that's good. I ---- my name is Christina Asme. I represent the appellant, Disability Rights New York. We are ---- we are challenging DOC, New York State Department of Corrections Community Service, which we're again calling DOC. We're challenging an appeal that didn't ---- sorry, we are appealing a decision by the district court that denied us full prevailing party status in the second D-R-N-Y v. DOC's case. So this is one of three lawsuits, which the first case ---- the first D-R-N-Y-1 we just argued, and now we are focusing on D-R-N-Y-2 in this argument. Again, this case challenges ---- the underlying case challenges DOC's withholding of records that D-R-N-Y requested. I will not go through the reasoning why we need these records again because I did that in the last argument. In this case, again, like the last case, D-R-N-Y received the very relief that we were seeking in the lawsuit. We received the copies of records that we requested. Nonetheless, the district court abused its discretion when it applied an incorrect legal standard to determine that D-R-N-Y was not the ---- did not have the prevailing party status for the entirety of the case. Additionally, in this case, the district court abused its discretion and committed a reversible error when it concluded that D-R-N-Y's fees and hourly rates were excessive. In the ---- in this case, we filed a preliminary ---- a mandatory preliminary injunction. And to get straight to the point, D-R-N-Y is the prevailing party under the Lackey v. Stinney's bright ---- under Lackey v. Stinney's bright line rule. In that rule, the court must consider whether a party achieved the enduring judicial relief beyond the transient ---- beyond a transient victory and that it was judicially sanctioned. In other words, this ---- the court, the district court must look ---- must consider whether the court conclusively resolved the claim by granting the relief on the merits. And in this case, the ---- the judicially sanctioned enduring judicial relief did come from the preliminary injunction. That is our position because the court concluded, as a matter of law and fact, that we are entitled to the records that we requested under B ---- sorry, yes, under ---- that there was a clear likelihood of success on the merits. Yes. This case is a ----  That didn't mean that they ---- that wasn't a summary judgment grant. There ---- It gave you preliminary relief. It ---- Some might understand Lackey v. Stinney to say that's not enough. But now I don't understand them to be challenging the award insofar as it ---- as the to B, not A. But you want ---- you want fees for the preliminary ---- the part of the preliminary injunction you didn't secure, right? It's our position that we were the prevailing party because we received ---- On A. On A and B, because we ---- Well, B, nobody's challenging your getting fees on that. But only a very point in ---- I mean, I could argue that Lackey v. Stinney wouldn't support it, but it's not ---- There hasn't been a cross appeal on that. We ---- It's our position that the preliminary injunction, the ---- this was a mandatory preliminary injunction. So it's a ---- that's a fundamental distinction between Lackey. In the Lackey case, drivers lost their driver's license because of a state law that ---- that removed a person's right to have a driver's license when they had unpaid court fees. And the drivers in that case challenged that law as unconstitutional because it violated the due process clause. And so what the court did in that case was it issued a ---- just a standard P.I. order to say that we're going to temporarily halt that state law. And that's what the court did. And then right after that order came from the district court, the ---- a non-party, the legislature, basically they repealed that law and the case became moot. And that was a truly a transient victory by the drivers because the relief from the P.I. in no way was permanent. It was subject to future litigation in the case. But this case is different because what we have here is a mandatory preliminary injunction. Within that order, the judge providing ---- The Supreme Court itself characterized what it was holding as a bright-line rule, not a qualified rule. And what it said was because preliminary injunctions do not conclusively resolve the rights of the parties on the merits, they do not confer prevailing party status. A plaintiff who secures a preliminary injunction has achieved only temporary success at an intermediary stage of the suit. Now, that's what it had to say about preliminary injunction. And again, I'll go back that the state has not challenged your getting a word of ease on the preliminary injunction you secured. Why don't you stay focused on how not having got a preliminary injunction with respect to A, you still think you're a prevailing party as to A? Because that's the only thing really at issue here. In ---- well, okay. With some caveats, but I won't get into them now because I don't think they're applicable to your point. But in the preliminary injunction, as it relates to both A and B ---- well, I'm sorry. As it relates to both ---- to A, the Court definitively said that the delay of the production of A's documents, that it ---- There was a delay and therefore it's denied. Even there, there's a likelihood of success on the merits. But it was denied because you failed to show irreparable harm. Right. So you didn't get the relief you were seeking. Right. And so I'm still trying to figure out how you're a prevailing party with respect to your claim as to A. Because in that preliminary injunction order, the Court made factual conclusions that were on the merits. And they all ---- he also made legal conclusions as to B, that ---- that denial of access ---- in particular with B, he said the judge on page A56, Judge Sotheby's said that the denial of access, quote, defeats the purpose of the PME Act. And in light of what DOCS was doing of completely with preventing us to have access from B's records. Now, with regard to A, the Court in that mandatory preliminary injunction order identified that the delay ---- that the ---- as a factual conclusion, that DOCS delayed DRNY access to individual A's records, which you just identified as well. And the conclusion is that there was a clear likelihood you would succeed on the merits. That is not a final decision on the merits. It certainly is a strong signal that the Court thinks you're likely to succeed, but it's not a conclusive decision. It's still open to litigation, right? In ---- So under Lackey, that wouldn't ---- and in any event, you didn't get the relief because you couldn't satisfy the harm prong. Well, in Lackey, we're really focused on the enduring judicial relief that's judicially sanctioned. And that determination, as a matter of fact that the Court made, that DOCS delayed access, DRNY access to the records of A, that we actually appeal ---- I think what's important in that is that DOCS involuntarily turned those records over in an interlocutory appeal of a finite issue as to whether or not DRNY is irreparably harmed if we don't get access to unredacted copies of records. And that this Court unequivocally said that the case is moot because DOCS gave us those records. And DOCS gave us those records in light of the factual determination that went to the merits of the underlying claim that we ---- They say they didn't comply with New York law. Well, the New York law didn't even exist at this time. All right. Well, we'll hear from you. Appreciate it. Thank you. Attorney Brody. May it please the Court, Frederick Brody for DOCS. The district court appropriately exercised its wide discretion to determine the amount of attorneys' fees by reducing plaintiffs' claimed fees in three reasonable ways. First, the district court reasonably exercised discretion to cut off fees as of July 23, 2021. That was the date of the preliminary injunction. The P.I. as to Individual B was plaintiffs' only success in the litigation. The district court denied plaintiffs' summary judgment motion, granted DOCS' summary judgment motion, and entered judgment dismissing the complaint. Time spent after the P.I. was entered accounted for a substantial amount of the additional fees that plaintiff is claiming in this appeal. A large part of the fees requested come from plaintiffs' unsuccessful appeal to this P.I. order, which plaintiff now claims it won. The district court reasonably declined to award fees for that time. In this Court, when asked at oral argument what relief plaintiff wanted, plaintiffs' counsel requested, quote, a clarification of the law, close quote. As this Court pointed out in its summary order, that would have been an unauthorized advisory opinion. This Court dismissed the appeal as moot. That was a loss for plaintiff. As the appellant, plaintiffs sought relief from this Court. The Court awarded no relief. Second, the district court reasonably reduced the fee to exclude work on the P.I. as to Individual A. Plaintiffs' P.I. motion was denied as to Individual A, so plaintiffs did not prevail. And DOCS won summary judgment as to Individual A. So it was reasonable to divide the P.I. fees in half and attribute 50 percent to Individual A and disregard that 50 percent. The 50 percent that was attributed to Individual B, of course, we did not appeal from. I didn't anticipate Lackey. We followed the law of this Court. Even if, I mean, this is a curious situation. Lackey does create a right-line rule with regard to preliminary injunctive relief, but in the context of producing documents, if a preliminary injunction is entered and is complied with by DOCS, the documents are produced, and then the matter becomes moot. And it seems a little strange to deny prevailing party status to the party requesting production in that context. That question isn't really before us, I think, because you're not contesting the production of the fees with regard to Individual B. That is my answer, Your Honor. That Individual B, we lost the P.I. We complied with it promptly, and we're not contesting that they're entitled to fees. But were this Court to award additional fees over and above what the district court awarded post Lackey, if this Court were to award post Lackey additional fees, that would, at a minimum, be out of step with Lackey. And that's our argument on Lackey. The district court reasonably – I think I'm up to my third way in which the district court reasonably exercised its discretion. It reasonably exercised discretion to reduce plaintiffs' billing rates. The Court chose to compensate plaintiffs' counsel at the rates applicable when they filed and briefed the P.I. motion. The decision to enhance or reduce rates is entrusted to the district court's discretion. Although the Supreme Court has approved enhancement as a device to compensate for delay, enhancement is not mandatory. Compensation for delay would be inappropriate here under this Court's precedent because plaintiff caused the delay. Among other things, the district court suggested a procedure by which plaintiff could obtain records through a written request without inspecting them on site. That's at pages 55 to 56 of the record. And also, docket number 43, a lengthy order setting a settlement conference and essentially proposing the district court's solution to the problem. Plaintiffs did not use that procedure. Well, if – if – I mean, this is – we're sort of in a hypothetical universe where we accept prevailing party status and now we're deciding whether certain reductions in the fees were okay. I mean, it seems to me a plaintiff is entitled – their goal is to create – get a binding judgment that doesn't impose burdens on them above and beyond what the Federal Protection and Advocacy Acts put on them in the course of their requesting records. So the fact that the district court came up with a sort of proposed solution that required more of the plaintiffs than, in their view, the Protection and Advocacy Acts required, it doesn't seem to me to be a reason to ding them for going forward if they were otherwise a prevailing party. Well, my point on that is that if plaintiff had used that procedure, and there's no record that that procedure would have imposed an undue burden on plaintiff, I mean, when you talk about burden, you know, there is certainly a minimum of burden in writing a letter, but there's no record that it would have stopped plaintiff's operations or caused harm to plaintiff's work in any way. If plaintiff had just listened to the district judge and said, okay, you've given us direction, we're going to follow it, the case would have been over because there wouldn't have any longer been a ground for dispute. Docks did not contest the district court's method, but, you know, again, plaintiff didn't like it and took an appeal to this Court, which they lost. I mean, at the end of the day, this is about resources, right? This is about whose resources get expended and how in gathering and providing these records. And Docks was trying to come up with procedures that made records available, but the disability rights folks would have to use their resources to come find them, mark them, make the request, and then the work is significantly reduced for Docks. Disability rights folks are saying, no, under the law, we make a request, you've got the obligation to go through and hold them and find them. I mean, at the end of the day, accepting the district court's proposal strikes me as would have been a retreat from the position that I think they reasonably advocated whether or not they prevailed. Well, Your Honor has outlined a legal dispute as to what should be and can be required of DRMY under the P&A Act. And that legal dispute was not resolved by Supreme Court. In part, it was not resolved because we voluntarily produced the records of individual A, and then when there were two little redactions that we had missed, we produced the records unredacted and that mooted the case. Under Lackey, that's not a victory. Right. I'm responding to your argument about who's responsible for the delay and whether we know that there is, under Second Circuit law, we've said really should use current rates and then we've said, well, unless the plaintiff's responsible for the delay. And as I understand your argument, you're invoking that and saying they're responsible for the delay. And I'm just questioning whether pursuing the litigation to the conclusion, I mean, I'm sure they cared about the records in these particular cases, but their bigger concern was the ongoing tension between your two agencies about how these requests were going to be processed. So not shrugging and accepting the district court's sort of compromise proposal doesn't strike me as the kind of action that counts as a delay that dings your fee request. That's all. All right. Well, you know, we can put that argument to the side because there's other delays. There was an interlocutory appeal by plaintiffs in part of the judgment that it won, not the judgment, but the preliminary injunction order that it won. They were appealing the preliminary injunction as to both Individual A and Individual B. And this Court had to point out in its summary order that, well, you can't really appeal from something that you win. And as to the Individual B appeal, that was mooted because we complied with the order. You know, docs didn't delay when we didn't. When we got a summary, when we got a preliminary injunction against us, we produced right away. So I'm not hearing a lot of questions, so we'll give you a minute to wrap up here and then we can hear from your colleague. Well, I think I've gotten to the three areas where district court reasonably exercised its discretion to reduce plaintiffs' requested fee. And I mean, although the reduction was large, the fee that plaintiff requested was large, and under the circumstances, they weren't entitled to it. Appreciate it. Thank you. Thank you. Attorney Asbee. Thank you. DRNY received the exact relief that we were seeking in the complaint, which was the record. That was why we were forced into court to file these cases, because docs prevented us not only physical access, but also access to copies of the records that we requested. We were forced into court for a second time to get access to the very records that we were entitled to in copy format. That is permanent. The relief that we received was permanent relief. We did file a mandatory preliminary injunction. We received court determinations on the law and facts that we were entitled to the records, most importantly, substantively different from WACI. Well, to the extent you received them in preliminary injunction litigation, because that's where you received these fees. Yes, Your Honor. In preliminary injunction proceeding. Given Lackey and Buchanan, anything they did after that that gave you what you might have gotten in the end from full litigation seems to fall within the catalyst preclusion. I mean, yes, you could file a lawsuit, and your filing might cause someone to give you what you want. That's not a judicial determination that gives you lasting relief. The preliminary injunction, it seems to me, at best gives you temporary relief under Lackey. But then they went ahead and gave you purportedly what you wanted. But that doesn't seem to be that you were a prevailing party in the lawsuit. Nothing about this case provided us temporary relief. We received the records from Dockson and Bolling. It's whether the court gave you the permanent relief. Right. Tell me what order you're looking at that gives you permanent relief. We are looking at the mandatory preliminary injunction. When you say a mandatory preliminary injunction, what do you mean by mandatory? Well, there's a heightened standard that the court reviews when what you're looking at is a change. Yes, I understand that. And that's what I'm talking about. But the court, nevertheless, gave you relief that was preliminary because there could still be litigation about that matter. Had the court intended to give us truly preliminary or temporary relief, they would have put a protective order or they would have required us to return the records. Are you taking the position that the court's finding that there was clear likelihood of success on the merits precluded further litigation on that question? As to the access of the records themselves, which is what we were seeking from the case, the answer is yes. But we also, in that case, were seeking declaratory judgment. I understand that. And then Judge Robinson pointed out that as a practical matter, you got the records. I understand that. But there's still a question about what prompted it. OK. Appreciate it. Thank you, Your Honor. Thank you all. Thanks, everybody, for hanging in there today. We have one case on submission, 24-14-23, United States versus Mary Clinton et al. We will take that on submission and take this case under advisement as well. And with that, I would ask the Courtroom Deputy to adjourn the proceedings. Thank you, Court. It is adjourned.